United States District Court
Southern District of Texas
**ENTERED**
November 22, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DONALD LLOYD DAVIS, JR., §
TDCJ #01762796, §
 §
      Plaintiff, §
 §
v. §
 §    CIVIL ACTION NO. H-19-1729
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
 §
      Defendant. §

## MEMORANDUM OPINION AND ORDER

State inmate Donald Lloyd Davis, Jr., has filed a handwritten 1983 Civil Rights Complaint With Jury Demand [and] Memorandum of Law ("Complaint") (Docket Entry No. 1), alleging that he was denied adequate medical care, or that care was delayed, for an injury to his right foot. At the court's request the State Attorney General's Office has supplemented the pleadings with a report under <u>Martinez v. Aaron,</u> 570 F.2d 317 (10th Cir. 1978) (*Martinez* Report, Docket Entry No. 19), which includes over 800 pages of administrative and medical records. After considering all of the pleadings, the court concludes that this case must be dismissed for the reasons explained below.

## I. Background

Davis is presently incarcerated at the Darrington Unit in Rosharon, Texas.[1] Although he references several unidentified medical providers in his Complaint, the only named defendant is Lorie Davis, who serves as Director of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ").[2] The incident underlying Davis's Complaint and the records of care that he subsequently received from providers employed by the University of Texas Medical Branch ("UTMB") through the TDCJ Correctional Managed Care ("CMC") program are summarized below.

The incident that forms the basis of Davis's Complaint occurred at the Polunsky Unit in September of 2017.[3] Records show that on September 4, 2017, Davis was involved in an altercation with another inmate started in the cell and continued into the dayroom.[4] After Davis and the other inmate failed to heed orders to stop fighting, correctional officers deployed a chemical agent to subdue the combatants and escorted both offenders to the showers

---

[1]Complaint, Docket Entry No. 1, p. 14. For purposes of identification, all page numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[2]Id. at 1.

[3]Id. at 2-4.

[4]Incident Report, Docket Entry No. 19-1, p. 5.

-2-

for decontamination.[5] Davis was then examined by a nurse in the unit medical clinic, where he denied having any injury.[6]

As a result of the altercation, Davis was charged with a disciplinary offense for fighting without a weapon and causing injury to the other inmate.[7] Davis was subsequently convicted of those charges.[8]

On September 6, 2017, Davis requested medical care for pain in his right foot, which he described as swollen and discolored.[9] Davis reported that his foot was injured during the September 4 altercation when an officer "stepped on his toe and hit his ankle causing the pain."[10] The nurse who examined Davis noted that his right ankle was "slightly swollen."[11] The nurse prescribed acetaminophen for pain and crutches.[12] She also scheduled a follow-up appointment for Davis to see a medical provider and an x-ray.[13]

---

[5]Id.

[6]CMC Use of Force Nursing Note, Docket Entry No. 19-1, p. 130.

[7]Offense Report, Docket Entry No. 19-1, p. 61.

[8]TDCJ Disciplinary Report and Hearing Record, Docket Entry No. 19-1, p. 60.

[9]Complaint, Docket Entry No. 1, p. 3.

[10]CMC Nursing Protocol for Musculoskeletal Symptoms, Docket Entry No. 19-1, p. 113.

[11]Id.

[12]Id. at 114.

[13]Id. at 114, 115; CMC Clinic Notes - Nursing, Docket Entry No. 19-1, p. 131.

Davis returned to the clinic in a wheelchair for his follow-up appointment on September 7, 2017. A physician's assistant noted "mild swelling" of the "1st & 2nd toes" on the right foot.[14] X-rays of the right foot showed "no fracture" or other "bony abnormalities."[15] The physician's assistant diagnosed a "right foot contusion" and prescribed "crutches, weight bearing as tolerated," and pain medicine.[16]

The following day Davis was sent to the Jester IV Unit for inpatient mental health crisis management.[17] When he arrived at the Jester IV Unit Davis continued to complain of pain and swelling on his big toe.[18] A nurse examined him on September 8, 2017, prescribed Motrin for pain, and scheduled him for a follow-up appointment with a provider.[19] Davis was seen for a follow-up appointment in the clinic on September 12, 2017.[20] A radiologist examined the x-rays taken previously and observed "no acute fracture or dislocation."[21]

---

[14] CMC Addendum Note, Docket Entry No. 19-1, p. 117.

[15] Id.

[16] Id.

[17] CMC Nursing Protocol for Psychiatric Symptoms, Docket Entry No. 19-1, p. 730; CMC Mental Health Services - Mental Health Inpatient Crisis Management, Docket Entry No. 19-1, p. 718.

[18] CMC Inpatient Nursing Progress Note, Docket Entry No. 19-1, p. 706.

[19] Id.

[20] CMC Clinic Notes, Docket Entry No. 19-1, p. 118.

[21] CMC Clinic Notes, Docket Entry No. 19-1, p. 125.

Davis was released from the Jester IV Unit and sent to the Ramsey I Unit, where he was seen by unit providers on September 15, and September 16, 2017.[22] On September 18, 2017, officers observed that he had made a noose in his cell and was attempting to put it around his neck.[23] Because Davis stated that he was suicidal,[24] he was returned to the Jester IV Unit for mental health crisis management.[25]

On September 21, 2017, Davis was seen in the Jester IV Unit clinic for complaints of continued pain in his right foot.[26] A clinician noted that Davis's x-ray disclosed no fracture and recommended a referral for a CT-scan of his foot to determine whether he had a "Lisfranc injury" to a joint or "crush injury" to the bones leading up to his toes.[27]

---

[22]CMC Outpatient Mental Health Services, Docket Entry No. 19-1, p. 687; Nurse Triage Form, Docket Entry No. 19-1, p. 685.

[23]TDCJ Emergency Action Center System, Docket Entry No. 19-1, p. 12.

[24]Id.; CMC Outpatient Mental Health Services, Docket Entry No. 19-1, p. 680.

[25]CMC Mental Health Services, Docket Entry No. 19-1, pp. 606-09 (detailing Davis's referral to Jester IV for crisis management due to a "suicidal attempt" and history of mental health issues).

[26]CMC Clinic Notes, Docket Entry No. 19-1, p. 124.

[27]CMC Clinic Notes, Docket Entry No. 19-1, p. 125; CMC Inpatient Nursing Progress Note, Docket Entry No. 19-1, p. 657 (recommending Davis for an appointment at the UTMB Hospital in Galveston for a CT scan of his right foot). A "Lisfranc" injury, named after the French surgeon Jacques Lisfranc, typically references an injury to a joint or ligament. See STEDMAN'S MEDICAL DICTIONARY 1109 (28th Ed. 2006).

"Multiplanar CT imaging" was performed on Davis's right foot on September 28, 2017.[28] The physician who reviewed the results of that test diagnosed a "[g]reat toe distal phalanx fracture" with soft tissue swelling.[29] The fracture was stabilized with "buddy tape" around the affected toe.[30]

Davis was seen for a follow-up appointment with an orthopedic specialist with the UTMB Hospital on or about October 24, 2017, as part of an Orthopedic Foot Clinic, where Davis continued to complain of pain in his right foot.[31] Davis was given a "[f]racture boot" to wear on his right foot, Tylenol for pain, and scheduled for another follow-up appointment in December.[32]

In his pending Complaint, which was received on May 7, 2019, Davis appears to contend that the medical provider who took x-rays of his injured foot at the Polunsky Unit on September 7, 2017, and the provider who later reviewed those x-rays at the Jester IV Unit on September 12, 2017, "erroneously" concluded that there was no fracture in his right foot and that he was "wrongly" diagnosed with

---

[28] CMC Radiology Report, Docket Entry No. 19-1, p. 126.

[29] Id. at 127; CMC MD/MLP Chart Review, Docket Entry No. 19-1, pp. 128-29.

[30] CMC MD/MLP Chart Review, Docket Entry No. 19-1, p. 129.

[31] Id. at 136-38; see also Step 2 Grievance response dated November 28, 2017, Docket Entry No. 19-1, p. 101 (summarizing care that Davis received from an orthopedic specialist).

[32] Id. at 137, 138; see also Step 2 Grievance response dated November 28, 2017, Docket Entry No. 19-1, p. 101 (noting that Davis had a follow-up appointment with the specialist set for December 2017).

a mere contusion.[33] Davis claims that he was denied adequate medical care, or that care was delayed, after a fracture of his big toe was eventually diagnosed following the CT scan on September 28, 2017.[34] Davis alleges that "the agency of [TDCJ] should be held liable" for the inadequate care that he received, and he seeks unspecified damages under 42 U.S.C. § 1983 for the violation of his constitutional rights.[35]

## II. Standard of Review

Because Davis is a prisoner who proceeds in forma pauperis, the court is required to scrutinize the claims and dismiss the Complaint, in whole or in part, if it determines that the Complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). The Supreme Court has held that a complaint filed by a litigant who proceeds in forma pauperis may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 109 S. Ct. 1827, 1831-32 (1989). In other words, a filing is "frivolous" if it "lacks an arguable basis in law or fact or if there is no realistic chance of ultimate success." Henthorn v. Swinson, 955 F.2d 351, 352 (5th Cir. 1992).

---

[33]Complaint, Docket Entry No. 1, pp. 3, 5.

[34]Id. at 9.

[35]Id. at 11, 13.

In this case the court requested a *Martinez* Report, which is a procedure that asks prison officials to investigate the facts surrounding a prisoner's civil rights claim and construct an administrative record. Martinez, 570 F.2d 317. Use of a *Martinez* Report has been approved by the Fifth Circuit in Cay v. Estelle, 789 F.2d 318 (5th Cir. 1986) and Parker v. Carpenter, 978 F.2d 190, 191 n.2 (5th Cir. 1992), as a tool to supplement the pleadings and assist the court in making a determination of frivolity under 28 U.S.C. § 1915(e)(2)(B). See Norton v. Dimazana, 122 F.3d 286, 292-93 (5th Cir. 1997); Johnson v. Seckler, 250 F. App'x 648, 649 n.1 (5th Cir. 2007).

In conducting this review the court is mindful that the plaintiff proceeds pro se in this case. Courts are required to give a pro se litigant's contentions, however inartfully pleaded, a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Even under this lenient standard, pro se litigants must still properly plead sufficient facts that state a plausible claim to relief. See Whitaker v. Collier, 862 F.3d 490, 497 (5th Cir. 2017) (citations omitted).

## III. Discussion

### A. Claims Against TDCJ Director Lorie Davis

Davis contends that he was denied adequate medical care, or that care was delayed, in violation of the Eighth Amendment. Davis does not allege facts showing that Lorie Davis had any involvement in his medical care or that care was delayed due to a particular prison policy. Absent a showing of personal involvement in the alleged constitutional violation, Davis does not state a viable claim under § 1983 where Lorie Davis is concerned. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a [42 U.S.C. § 1983] cause of action."). Likewise, for reasons discussed below, Davis has not established that any of the unidentified providers referenced in his Complaint denied him adequate medical care under the governing legal standard.

### B. Claims Against Unidentified Providers

To state an actionable claim under 42 U.S.C. § 1983, a prisoner must demonstrate that prison officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle, 97 S. Ct. at 291. A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994); Jones v. Texas Dep't of Criminal Justice, 880 F.3d 756 (5th Cir. 2018).

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

It is evident from the voluminous records provided with the *Martinez* Report that Davis received extensive care for his injured right foot and that a fracture of his great toe, which was not apparent from the initial x-rays taken on September 7, 2017, was eventually diagnosed following a CT scan on September 28, 2017. If the medical records demonstrate that appropriate care was provided, any claim that a prisoner was denied medical treatment has no merit. See Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference to medical needs claim where medical records document that the prisoner was not denied medical attention).

The records further establish that any delay in diagnosing the issue was caused by the need for crisis management due to concerns by prison personnel about Davis's mental health and was not caused by deliberate indifference on their part. The records further reflect that Davis did not suffer serious harm or worsening of his condition as the result of the delay in diagnosing the fracture of his big toe. Absent a showing that the delay in medical care was due to deliberate indifference that resulted in "substantial harm," Davis's allegations of delay do not state a claim. See Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasis in original) (citation omitted); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

To the extent that Davis contends that providers made an error or that he was wrongly diagnosed when he was treated initially at the Polunsky Unit and the Jester IV Unit, allegations of this sort are insufficient to establish deliberate indifference in violation of the Eighth Amendment. See Gobert, 463 F.3d at 346. Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)). Thus, allegations of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fail to establish the requisite culpable state of mind. See Domino, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference").

Because Davis does not allege facts showing that any particular provider denied him medical care with deliberate indifference, he has not articulated a viable claim, and his Complaint will be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. The 1983 Civil Rights Complaint With Jury Demand [and] Memorandum of Law filed by Donald Lloyd Davis, Jr. (Docket Entry No. 1) is **DISMISSED with prejudice**.

2. The dismissal will count as a "strike" for purposes of 28 U.S.C. § 1915(g).

3. Plaintiff's Preliminary Injunction (Docket Entry No. 27) is **DENIED**.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the plaintiff. The Clerk will also send a copy of this Order to (1) the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas 78711, Fax: 512-936-2159 and (2) the Three Strikes List at Three_Strikes@ txs.uscourts.gov.**

**SIGNED** at Houston, Texas, on this 22nd day of November, 2019.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE